UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD DIAZ,<br><br>*Plaintiff,*<br><br>v.<br><br>CITY OF PASSAIC, et al,<br><br>*Defendants.* | Civil Action No. 16-9282<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

The current matter comes before the Court on the motions to dismiss filed by (1) Gary Schaer, Peter Rosario, and Zaida Polanco[1] (collectively the "Individual Defendants") (D.E. 32) and (2) the unopposed motion of Alex Blanco (D.E. 39). Plaintiff Richard Diaz opposed the Individual Defendants' motion (D.E. 35), and the Individual Defendants filed a brief in reply (D.E. 39).[2] The Court reviewed all the submissions in support and in opposition, and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, the Individual Defendants' motion is **GRANTED** and Blanco's motion is **GRANTED IN PART and DENIED in part**.

---

[1] Defendant Polanco is improperly pled as Saida Polanco.

[2] In this Opinion, Blanco's brief in support of his motion to dismiss (D.E. 39-1) will be referred to as "Blanco MTD" and the Individual Defendants' brief in support of their motion to dismiss (D.E. 31-1) will be referred to as "Ind. Defs. MTD". Plaintiff's brief in opposition to the Individual Defendants' motion (D.E. 35) will be referred to as "Plf. Br." and the Individual Defendants' reply brief (D.E. 40) will be referred to as "Ind. Defs. Rep."

# I. FACTUAL AND PROCEDURAL BACKGROUND[3]

This matter involves allegations that Plaintiff, the former Public Safety Director for Passaic, New Jersey (the "City" or "Passaic"), was unlawfully removed from his position as political retribution for his mayoral campaign. Plaintiff, a former officer and later chief of the Passaic Police Department, became the City's Public Safety Director in 2013. Am. Compl. ¶ 13. Polanco is a council member with Passaic, Rosario is a commissioner on the City's board of education, Blanco is the former mayor of Passaic, and Schaer is the president of the City's council. *Id.* ¶ 8. Schaer is also allegedly the political "boss" of the City and "has *de facto* control over the City government through political influence as City Council President and as a member of the New Jersey Assembly, through his patronage power, and through his ability to influence State aid decisions about and for the City." *Id.* ¶ 9.

In September 2016, after a meeting with Defendants Schaer and Blanco, Diaz was placed on administrative leave with pay. *Id.* ¶ 14. Plaintiff was suspended based on allegations that he interfered with City personnel during an investigation into a sexual harassment complaint from a City employee. *Id.* ¶¶ 14-15. Plaintiff contends that the charges against him are false. *Id.* ¶ 22. In fact, Plaintiff alleges that the sexual harassment investigation occurred in August 2016, when Plaintiff was on vacation for "a majority" of the month. *Id.* ¶ 19.

Diaz was suspended "days after" he announced his candidacy for City mayor. After his candidacy announcement, Defendants Rosario and Polanco "visited the Plaintiff as [sic] advised that [Defendant Schaer] was not happy." *Id.* ¶ 19. Prior to his suspension, Diaz never received any written or verbal notice of the City's intent to suspend him. In addition, the City failed to

---

[3] The facts are taken from the Amended Complaint, D.E. 19, for purposes of the current motions.

provide Diaz with a disciplinary hearing. Plaintiff allegedly remains on administrative leave and has not received a formal disciplinary charge from the City. *Id.* ¶¶ 21-22.

On January 30, 2017, non-party Roy Bordamonte, a sergeant with the Passaic Police Department, was summoned to Internal Affairs ("IA") by non-party Detective John Rodriguez. Bordamonte was present when Diaz announced his candidacy for mayor. *Id.* ¶ 23. Bordamonte was informed that he was a potential witness in an IA investigation about a police report that Bordamonte had prepared and which was found in Plaintiff's desk after the suspension. *Id.* ¶¶ 24-25. On February 15, 2017, Bordamonte received a target letter from the IA alleging a minor rule infraction for giving confidential information to a civilian. Plaintiff maintains that police reports are not *per se* confidential and that he is not a civilian. *Id.* ¶¶ 26-27. Rodriguez purportedly advised Bordamonte that the IA proceeding "was directed by 'upstairs,'" a euphemism within the Passaic Police Department for the Mayor's Office. *Id.* ¶¶ 26, 28. On February 17, 2017, another IA officer also told Bordamonte that the investigation was coming from the Mayor's Office. *Id.* ¶ 29. On March 21, 2017, Bordamonte received a revised target letter and a Preliminary Notice of Discipline seeking his termination. Bordamonte's termination was allegedly in retaliation for his refusal to testify against Plaintiff as to Plaintiff's interference in the sexual harassment investigation and for reporting efforts to coerce Bordamonte to give perjured testimony against Plaintiff. *Id.* ¶ 30.

Diaz filed suit in state court, alleging, among other things, 42 U.S.C. §§ 1983 and 1988 claims against the City, John Doe, and ABC entities. The City removed the matter to this Court on December 15, 2016. D.E. 1. On January 12, 2018, Diaz filed an Amended Complaint that

added Defendants Schaer, Blanco, Polanco and Rosario, among others.[4] D.E. 19. The Amended Complaint generally alleges that Defendants violated several of Plaintiff's constitutional rights. Diaz alleges that Defendants' actions were done in retaliation for his mayoral campaign. *See generally* Am. Compl. To that end, the Amended Complaint asserts the following claims: (1) procedural due process violation pursuant to 42 U.S.C. §§ 1983 and 1988; (2) substantive due process violation pursuant to 42 U.S.C. §§ 1983 and 1988; (3) retaliatory and due process violations under the New Jersey Civil Rights Act ("NJCRA"); (4) equal protection violation under the NJCRA; (5) a *Monell* claim under the NJCRA; (6) request for injunctive relief against the City; and (7) a claim for *respondeat superior*. *Id.*

Blanco filed an Answer to the Amended Complaint on January 23, 2018 (D.E. 22), then filed his instant motion to dismiss pursuant to Rule 12(b)(6) on April 30, 2018 (D.E. 39). The Individual Defendants filed their motion to dismiss on March 2, 2018. D.E. 31. The Individual Defendants seek to dismiss the Amended Complaint in its entirety arguing that Plaintiff fails to allege specific facts as to each Individual Defendant's wrongful conduct, and also raise specific issues regarding Plaintiff's procedural due process claim (Count One), substantive due process claim (Count Two), equal protection claim (Count Four), and a Section 1985 claim (which does not appear to be pled). D.E. 31.

## II. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the rule, it

---

[4] Schaer and Polanco opposed Plaintiff's motion to file an amended pleading arguing that the proposed Amended Complaint failed to state a claim upon which relief can be granted. D.E. 12. In granting Plaintiff leave to amend, Judge Clark stated that the proposed Defendants' arguments were better suited for a motion to dismiss. Motion to Amend Opinion at 5, D.E. 18.

must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

A Rule 12(b) motion must be filed before a responsive pleading. Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). A Rule 12(c) motion for judgment on the pleadings, however, may be filed after the pleadings are closed. Fed. R. Civ. P. 12(c). In addition, Rule 12(h) provides that the defense of failure to state a claim may be raised through a Rule 12(c) motion for judgment on the pleadings or a Rule 12(b)(6) motion to dismiss. Fed. R. Civ. P. 12(h). Courts apply the same standard when

5

analyzing the defense of failure to state a claim for a Rule 12(b)(6) motion and a Rule 12(c) motion. *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

Here, Blanco answered the Amended Complaint before filing his Rule 12(b)(6) motion. As a result, Blanco's motion is procedurally improper. But given that Blanco could simply re-file the instant motion as a Rule 12(c) motion and because a Rule 12(c) motion for failure to state a claim is reviewed under the same standard as a Rule 12(b)(6) motion, the Court will construe Blanco's motion as having been filed pursuant to Rule 12(c). *See, e.g., Rivera v. Camden Bd. of Educ.*, 634 F. Supp. 2d 486, 488 (D.N.J. 2009) (construing motion to dismiss filed after answer as a Rule 12(c) motion).

### III. LEGAL ANALYSIS

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 and the NJCRA, N.J.S.A. 10:6-2. Section 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a Section 1983 claim, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

The NJCRA provides a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. 10:6-2. The "NJCRA was modeled after § 1983, [and so] courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (internal quotations and citation omitted). Therefore, the Court considers Plaintiff's Section 1983 and NJCRA claims together.

### 1. Group Pleading

At the outset, the moving Defendants all argue that the Amended Complaint must be dismissed because Plaintiff fails to plead sufficient facts demonstrating their individual involvement in the purported wrongdoing. Mere "conclusory allegations against [d]efendants as a group" that "fail[] to allege the personal involvement of any defendant" are insufficient to survive a motion to dismiss. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* When a number of defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct." *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (emphasis in original). A complaint that contains "impermissibly vague group pleading" will be dismissed. *Id.*

Here, Plaintiff falls far short of the requirement that he plead specific facts as to each Defendant's involvement in the alleged wrongdoing(s). Plaintiff's sole factual allegations as to the moving Defendants are that:

(1) Schaer is the "President of the City of Passaic Council"; Blanco is the former mayor of the City, Polanco is a council member for the City; and Rosario is a commissioner of the Board of Education for the City (Am. Compl. ¶ 8);

(2) Schaer is the political "boss" of the City and "has *de facto* control over the City government through political influence as City Council President and as a member of the New Jersey Assembly, through his patronage power, and through his ability to influence State aid decisions about and for the City" (*id.* ¶ 9);

(3) Plaintiff was placed on administrative leave "after a meeting with Defendants, Schaer and Blanco" (*id.* ¶ 14); and

(4) After the suspension, Defendants Rosario and Polanco "visited the Plaintiff as [sic] advised that [Defendant Schaer] was not happy" about Diaz's mayoral run (*id.* ¶ 19).

Thus, Plaintiff asserts essentially no facts under which the Court could even infer that Blanco, Polanco or Rosario engaged in improper conduct. And while Plaintiff pleads that Schaer is the political boss and was unhappy with Plaintiff's decision to run for mayor, this is not enough to plausibly allege any wrongdoing. If Schaer is in fact the political boss of Passaic (as alleged) and anyone ran against his wishes, the Court assumes that Schaer would not be happy. But the Court cannot reasonably infer from such paltry factual allegations that Schaer actually took any improper action vis-à-vis Plaintiff. At best, the Amended Complaint pleads possible, not plausible claims, as to Schaer. The allegations as to the other three Defendants are weaker. Therefore, Defendants' motions are granted on this basis and the Amended Complaint is dismissed in its entirety as to the moving Defendants.

Although the group pleading deficiency is dispositive, Plaintiff's pleading contains additional defects which the Court will address because Plaintiff will be granted leave to amend.

### 2. Due Process Claims (Counts One through Three)

The Individual Defendants and Blanco seek to dismiss Plaintiff's substantive due process claims because Diaz fails to plead that he had a protectable property interest. Ind. Defs. MTD at 9-10; Blanco MTD at 31-32.

"Substantive due process is a doctrine reserved for egregious official conduct that trenches upon the most fundamental of civil liberties." *Armbruster v. Cavanaugh*, 410 F. App'x 564, 567 (3d Cir. 2011). Accordingly, "litigants face substantial burdens to show violations of substantive due process." *Childress v. City of Orange Township*, No. 14-4354, 2018 WL 1378722, at *13 (D.N.J. Mar. 19, 2018). For a substantive due process claim challenging the validity of non-legislative state action, a plaintiff must first establish that he has a protected, fundamental property interest. *Greco v. Adult Diagnostic & Treatment Ctr.*, No. 05-3869, 2007 WL 4264544, at *3 (D.N.J. Dec. 3, 2007). For a property interest to be protected for the purposes of a substantive due process claim it must be fundamental under the United States Constitution. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000). Courts, however, "have not recognized public employment as a fundamental right created by the Fourteenth Amendment, which would trigger substantive due process protection." *Greco*, 2007 WL 4264544, at *3; *McLemore v. Lewis*, 2011 WL 13042510, at *6 (Law Div. Mar. 3, 2011) (stating that there is no substantive due process right to public employment under the NJCRA); *see also Filgueiras v. Newark Pub. Schs.*, 426 N.J. Super. 449, 469-70 (App. Div. 2012) ("An employee hired at will has no protected interest in his employment and may not prevail on a claim that his or her discharge constituted a violation of property rights.").

Here, although Plaintiff attempts to distinguish the cases that the Individual Defendants cite for support, Plaintiff fails to provide any authority establishing that he may have a cognizable property interest in his continued public employment. *See* Diaz Opp. at 19-20. Moreover, the Court could not find any such case law through its independent research. Accordingly, Plaintiff's substantive due process claims fail because Diaz does not adequately plead that he has protectable property interest. Counts Two and Three, therefore, are dismissed on these additional grounds.

Blanco also argues that Plaintiff's procedural due process claim should be dismissed because Plaintiff was not actually entitled to any procedural protections since Diaz was ultimately removed by Blanco's successor.[5] Blanco MTD at 20-30. This critical fact, that Diaz was ultimately removed from his position, however, is not pled in the Amended Complaint. *See* Am. Compl. ¶¶ 14, 19, 20, 22. As such, Blanco relies on documents outside the pleadings to make this argument. *See* Declaration of Counsel, D.E. 39-2. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Given the fact that Plaintiff's procedural due process claim is already dismissed because Plaintiff failed to plead facts demonstrating each Defendant's personal involvement, the Court will not convert the motion to one for summary judgment at this time. Blanco's motion, therefore, is denied on these grounds.

### 3. Equal Protection (Count Four)

The Individual Defendants also argue that Plaintiff's equal protection claim must be dismissed because Plaintiff does not plead that he is a member of a protected class or that he was treated differently because of his protected status. Ind. Defs. MTD at 13-14.

---

[5] This claim is only brought pursuant to Section 1983 because claims for procedural due process violations are not recognized under the NJCRA. *See Coles v. Carlini*, 162 F. Supp. 3d 380, 402-03 (D.N.J. 2015).

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. Traditionally, to prevail on an equal protection claim, a plaintiff must allege that he was treated differently than others who were similarly situated, and that this difference in treatment was the result of intentional discrimination based on his membership in a protected class such as religious affiliation or race. *See Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002).

Here, Plaintiff fails to sufficiently plead that he is a member of a protected class or that he was suspended as a result of his protected class status. Plaintiff counters that his claim should survive because he is asserting a "class of one" equal protection claim. Plf. MTD at 22-24. A plaintiff may proceed on a "class of one" theory by "alleg[ing] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To be similarly situated, "parties must be alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008). Plaintiff does not meet this burden—the meager facts in the Amended Complaint fail to suggest that Plaintiff is a member in a protected class, that others are similarly situated to Plaintiff, or that he was suspended for no rational basis. Consequently, Plaintiff's equal protection claim is dismissed on these grounds as to the Individual Defendants as well.

### 4. Municipal Liability Claims (Counts Five and Seven)

Blanco seeks to dismiss Plaintiff's *Monell* claim because the Amended Complaint contains no factual allegations of a city policy, custom or plan, which is necessary to plead a *Monell* claim. Blanco MTD at 38-40. "A municipality may only be held liable under Section 1983 if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury." *Jewell v. Ridley Township*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell v. Dept. of Social Servs.*,

436 U.S. 658, 694 (1978)). "In other words, the plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy, or acquiesced in the widespread custom, that caused the violation." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (internal citation omitted). "A plaintiff may show the existence of a *policy* when a decision-maker with final authority issues an official proclamation, policy, or edict." *Id.* (emphasis added) (internal quotations and citations omitted). "[A] *custom* may be established by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (emphasis added) (internal quotations and citations omitted).

Here, the Amended Complaint states that the City had "a pattern, practice or custom of conducting hearings concerning discipline of employees without adequate notice and/or opportunity to be heard, and without adequate procedural and substantive protections . . . ." Am. Compl. ¶ 55. Plaintiff, however, fails to plead any further details about these alleged policies or procedures. Because conclusory statements and threadbare recitations of the elements of a *Monell* claim are insufficient, Count Five is dismissed as to Blanco because it is not plausibly pled. *See, e.g., Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 595 (D.N.J. 2013) (dismissing claim against city because plaintiff failed to plead facts demonstrating the existence of a policy or custom).

Relatedly, Blanco also argues that Count Seven, a claim for *respondeat superior*, should be dismissed because the City's liability cannot be premised on a theory of supervisory liability. Blanco MTD at 38. A municipality cannot be held liable under a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. As a result, Count Seven is also dismissed on these grounds as to Blanco.

### 5. Section 1985 Claim

While not clear from the pleadings, the Individual Defendants construe the Amended Complaint as also asserting a Section 1985(3) conspiracy claim. The Individual Defendants contend that to the extent Plaintiff pleads a Section 1985(3) conspiracy claim, it also fails because Plaintiff does not plead that he is a member of a protected class. Ind. Defs. MTD at 15-16. A plaintiff must prove the following to sustain a Section 1985(3) claim:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983). In addition, Section 1985(3) conspiracy claims are limited to conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). Section 1985(3), however, "does not provide a cause of action for individuals allegedly injured by conspiracies motivated by discriminatory animus directed toward their political affiliation." *Farber v. City of Patterson*, 440 F.3d 131, 143 (3d Cir. 2006). Thus, Plaintiff cannot premise his conspiracy claim on his political affiliation and he fails to allege that he is a member of any other protected class.[6] Plaintiff's conspiracy claim, therefore, is dismissed as to the Individual Defendants.

---

[6] Even if Plaintiff did sufficiently allege that he was a member of a protected class, he fails to provide sufficient details as to the existence of a conspiracy. To survive a motion to dismiss for a Section 1985 conspiracy, a plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action." *Voth v. Hoffman*, No. 14-7582, 2016 WL 7535374, at *9 (D.N.J. Apr. 28, 2016). Plaintiff's conclusory allegations fail to provide sufficient detail by which the Court could infer that a conspiracy existed.

13

## IV. CONCLUSION

For the reasons discussed above, the Individual Defendants' motion is **GRANTED** and Blanco's motion is **GRANTED IN PART and DENIED in part**. Accordingly, the Amended Complaint is dismissed without prejudice. An appropriate Order accompanies this opinion. Plaintiff may file an amended pleading that is consistent with this Opinion, within thirty (30) days of the date of the Opinion and the accompanying Order.

Dated: January 28, 2019

John Michael Vazquez, U.S.D.J.