Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD DIAZ,<br><br>*Plaintiff,*<br><br>v.<br><br>CITY OF PASSAIC, et al,<br><br>*Defendants.* | Civil Action No. 16-9282<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

The current matter comes before the Court on the motions to dismiss Plaintiff's Second Amended Complaint (the "SAC"), D.E. 51, filed by (1) Alex Blanco, D.E. 62; (2) the City of Passaic ("Passaic" or the "City"), D.E. 63; and (3) Gary Schaer, D.E. 64. Plaintiff Richard Diaz opposed the motions, D.E. 67, and Defendants filed briefs in reply, D.E. 72, 75, 76.[1] The Court reviewed all the submissions in support and in opposition and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, the motions to dismiss are granted and the Second Amended Complaint is dismissed.

---

[1] In this Opinion, Blanco's brief in support of his motion to dismiss (D.E. 62-1) will be referred to as "Blanco MTD" and his reply brief (D.E. 75) will be referred to as "Blanco Reply"; Passaic's brief in support of its motion to dismiss (D.E. 63-1) will be referred to as "Passaic MTD" and its reply brief (D.E. 76) will be referred to as "Passaic Reply"; Schaer's brief in support of his motion to dismiss (D.E. 64-1) will be referred to as "Schaer MTD" and his reply brief (D.E. 72) will be referred to as "Schaer Reply"; and Plaintiff's brief in opposition to Defendants' motions (D.E. 67) will be referred to as "Plf. Opp.".

I.  **FACTUAL AND PROCEDURAL BACKGROUND**[2]

This matter involves allegations that Plaintiff, former Public Safety Director for the City, was unlawfully removed from his position as political retribution for his mayoral campaign. For purposes of the pending motion, the Court need not retrace this case's full factual and procedural history. The Court instead incorporates by reference the detailed background in its January 28, 2019 Opinion and Order that dismissed the Amended Complaint (the "FAC") without prejudice. D.E. 45, 46.

Diaz filed the SAC on March 19, 2019. D.E. 51. Like the FAC, the SAC generally alleges that Defendants violated Plaintiff's constitutional rights while retaliating against Diaz for his mayoral campaign.[3] In the FAC, among other things, Plaintiff alleged violations of procedural due process, substantive due process, and equal protection. In the SAC, Plaintiff changes his theory and now asserts a First Amendment political affiliation retaliation claim[4] pursuant to 42

---

[2] The Court draws the following facts from the SAC, which are taken as true for the purposes of the current motion. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

[3] Paragraph 14 of the SAC indicates that "[f]urther, and relating to Plaintiff being elected to office of Mayor, *I* was advised on numerous occasions by Zaida Polanco, who was then a councilwoman, that Schaer would not let it happen." SAC ¶ 14 (emphasis added). The Court assumes that the "I" should be "Plaintiff." In addition, although this paragraph seems to indicate that Plaintiff was in fact elected as mayor, this allegation is not repeated in the SAC. The SAC also does not indicate on or about when the "numerous occasions" occurred.

[4] Plaintiff's First Amendment claim is not clearly pled in the SAC. It appears that Plaintiff's claims could be construed either as claims for political affiliation retaliation or as claims for retaliation for protected speech by a public employee under *Pickering v. Bd. of Educ.*, 391 US. 563 (1968) and its progeny. *See, e.g., Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Because the parties' briefs focus on political affiliation retaliation, the Court construes the claim as such. In addition, the allegations in the SAC sound in political affiliation. However, because the Court is granting Plaintiff leave to amend, if Plaintiff is asserting a different theory of liability than that analyzed herein, Plaintiff must make his theory clear in his amended pleading.

2

U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"). To that end, the SAC pleads new factual allegations to substantiate Plaintiff's political retaliation claims.

Plaintiff was named the City's Public Safety Director in 2013. SAC ¶ 11. Plaintiff alleges that in September 2016, he had a barbeque at his home and announced his candidacy for mayor. *Id.* ¶ 15. Before the barbeque, plaintiff made his intentions to run known "to members of the community and the City's Governing Body[.]" *Id.* ¶ 12. It was clear, however, that Defendant Schaer, the "political 'boss' of the City," did not support Plaintiff's campaign. *Id.* ¶¶ 13-14. In fact, at some time in 2016 before the barbeque, Schaer made clear to Plaintiff that Schaer did not support Plaintiff's mayoral candidacy. At the time, Plaintiff told Schaer that he did not intend to run for mayor. *Id.* ¶ 13. Moreover, non-party councilwoman Zaida Polanco advised Plaintiff "on numerous occasions" that Schaer did not support Plaintiff. *Id.* ¶ 14.

The Monday after the barbeque, Plaintiff was informed that Schaer arrived at City Hall and was "visibly upset," *id.* ¶ 17, and then had a closed-door meeting with Blanco and the City's Business Administrator. During the meeting, Plaintiff heard Schaer shout Plaintiff's name several times. *Id.* ¶ 20. The following day, Plaintiff was placed on administrative leave[5] from his position as Public Safety Director based on an accusation that Plaintiff interfered with an investigation involving sexual harassment of City employees. *Id.* ¶¶ 21-24. Plaintiff claims that the allegation that he interfered with an investigation was a pretext and that he was actually suspended as retaliation for his mayoral campaign. *Id.* ¶¶ 29, 38. Plaintiff adds that he was not given notice or a hearing before being placed on leave. *Id.* ¶¶ 28-29. Similar to the FAC, Plaintiff also includes claims that retaliatory disciplinary action was also taken against a Sergeant Bordamonte,

---

[5] The SAC presents conflicting allegations as to whether Plaintiff's administrative leave was with or without pay. Initially, Plaintiff claims that it was with pay, *id.* ¶ 21, but later seems to indicate that it was without pay, *id.* ¶ 27.

3

apparently because Bordamonte was present when Plaintiff announced his run for mayor. *Id.* ¶¶ 30-37.

The SAC brings two counts, the first under § 1983 and the second pursuant to the NJCRA. *Id.* ¶¶ 39-50. Both counts are based on the same theory: unlawful retaliation against Plaintiff for announcing his mayoral candidacy in violation of rights to freedom of expression, assembly, and association. *Id.*

## II. MOTION TO DISMISS STANDARD

Defendants seek to dismissal Plaintiff's political retaliation claims pursuant to Rule 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however,

4

"must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## III.   LEGAL ANALYSIS

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 and the NJCRA, N.J.S.A. 10:6-2. Section 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a Section 1983 claim, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

The NJCRA affords a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

5

N.J.S.A. 10:6-2. The "NJCRA was modeled after § 1983, [and so] courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (internal quotations and citation omitted). Therefore, the Court considers Plaintiff's Section 1983 and NJCRA claims together.

### 1. Political Retaliation as to Blanco and Schaer

To set forth a *prima facie* claim for political retaliation, a plaintiff must plead that "(1) she was employed at a public agency in a position that does not require political affiliation, (2) she was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). Defendants argue that Plaintiff fails to establish the first and third elements of his *prima facie* claim. In this instance, the first element is dispositive.

"Employment decisions predicated on political affiliation are permitted when 'policymaking' positions are at issue." *Young v. Kisenwether*, 902 F. Supp. 2d 548, 555 (M.D. Pa. 2012) (citing *Galli*, 490 F.3d at 271); *see also Busa v. Township of Gloucester*, 458 F. App'x 174, 176 (3d Cir. 2012) ("While the dismissal of public employees for political reasons may constitute an impermissible infringement upon constitutional rights, an exception is often made for employees holding policy-making position, as such employees may properly be required to support the policy initiatives of elected officials."). The "key factor" to determine whether a job involves policymaking is "whether [the employee] has meaningful input into decision making concerning the nature and scope of a major [ ] program." *Galli*, 490 F.3d at 271 (quoting *Armour v. County of Beaverton, Pa.*, 271 F.3d 417, 420 (3d Cir. 2001)). A court should also consider "whether the employee has duties that are non-discretionary or non-technical, participates in discussions or other

6

meetings, prepares budgets, possesses the authority to hire and fire other employees, has a high salary, retains power over others, and can speak in the name of policymakers." *Id.*

In *Busa*, for example, the plaintiff brought suit after he was informed that he would not be re-appointed as the Director of Public Works in a new mayor's administration. Busa was a member of the same party as the new mayor, however, Busa alleged that he was perceived as being a member of the other party or part of "a different faction" of the new mayor's party. *Busa v. Township of Gloucester*, No. 10-1396, 2011 WL 1458026, at *1 (D.N.J. Apr. 15, 2011). To determine whether the Director of Public Works position required political affiliation, the district court considered township ordinances, the New Jersey Civil Service Commission, and the Faulkner Act, N.J.S.A. 40:69A-1, *et seq. Busa*, 2011 WL 1458026, at *5. Critically, "[a]ccording to the Township organizational ordinance, the Director of Public Works is the head of the division of streets, sanitation, and parks and playgrounds" and is "responsible for the proper and efficient conduct of all public works functions of the Township government." *Id.* In addition, it was a non-tenured position that reported directly to the mayor. *Id.* Based on this information, the district court determined that the Director of Public Works was a policy position. As a result, the district judge concluded that the defendants demonstrated that the position was subject to dismissal based on political affiliation. The plaintiff, therefore, could not establish a *prima facie* political retaliation claim.[6] *Id.* On appeal, the Third Circuit affirmed the district court's conclusion that the plaintiff's *prima facie* political retaliation claim failed as a matter of law. *Busa*, 458 F. App'x

---

[6] Although the issue was not raise by the parties, the Court notes that because Busa was a member of the same party as the mayor who removed him from the Director of Public Works position, *Busa* demonstrates that political affiliation claims may be premised on removal because an individual supports a different faction within the same party, as is the case here, rather than solely along traditional party lines. *See also Galli*, 490 F.3d at 272 ("Accordingly, we have held that a plaintiff can meet the second prong of a *prima facie* political discrimination claim if she suffers because of action support for a losing candidate within the same political party.").

7

at 177-78; *see also Ness v. Marshall*, 660 F.2d 517, 522 (3d Cir. 1981) (affirming finding that city solicitor occupied a policymaking position such that mayor had the right to dismiss solicitor due solely to political affiliation).

Here, Blanco[7] contends that Plaintiff occupied a high-level, policymaking position such that Plaintiff cannot plead a *prima facie* retaliation claim. Blanco MTD at 23. Thus, the critical question is whether the position of Public Safety Director for the City constituted a policymaking position. While the SAC clearly sets forth the position, it fails to indicate the duties and responsibilities of the office. As a result, Blanco relies on Passaic Ordinances § 5-85 and § 5-86 as they existed during the relevant time period.[8]

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A city ordinance constitutes a public record. *See, e.g., Campbell v. Conroy*, 55 F. Supp. 3d 750, 754 n. 3 (W.D. Pa. 2014) (relying on text of an ordinance to decide a Rule 12(b)(6) motion to dismiss because it was a public record); *see also Moore U.S.A., Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) ("[C]ourts that consider matters of public record in a Rule 12(b)(6) motion are limited to things such as statutes, case law, city charters, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administration agencies, or pleadings in another action."). Moreover, Plaintiff does not object to Defendants'

---

[7] In addition to asserting his own arguments, Schaer joined in Blanco's motion to dismiss. Schaer MTD at 1 n.1.

[8] Article X, which included §§ 5-85 and 5-86, was amended in 2016 to eliminate the position of Public Safety Director and return control of the Police and Fire Departments to their respective chiefs. *See* City of Passaic Ordinance No. 2085-16 (Dec. 6, 2016).

8

citation to the City ordinances. As a result, the Court considers the City Ordinances in deciding the current motion.

As set forth in the Ordinances §§ 5-85 and 5-86, the Public Safety Director of Passaic was appointed by the Mayor to serve during the Mayor's term; reported to the Mayor; and was in charge of the Police Department, the Fire Department, and the Office of Emergency Management. City of Passaic Ordinance No. 1920-12 at 1-2 (Nov. 8, 2012) (enacting Article X, which established the Public Safety Director role and responsibilities). The Public Safety Director was responsible for all employees in these departments, which included hiring, training, and discipline. In addition, the Public Safety Director was responsible for overseeing the daily operations for these departments; formulating policies, plans, and procedures for the departments; developing and administering an annual budget; and "otherwise function[ing] in an executive capacity in evaluating, organizing, and directing the Police Department, Fire Department and Office of Emergency Management." *Id.* at 2. Thus, Ordinances §§ 5-85 and 5-86 make clear that Plaintiff was the decision maker for major departments for the City. Accordingly, much like *Busa*, the Passaic Public Safety Director role involved policymaking, such that political affiliation was an appropriate requirement for the job.

Plaintiff argues that he did not hold a policymaking position because the mayor had the power to appoint and oversee the position. Plf. Opp. at 15-16; 19-20. Yet, the same was true for the Department of Public Works position in *Busa*. *Busa*, 2011 WL 1458026, at *5. As discussed, the district court determined that the Director of Public Works position was "properly subject to dismissal on the basis of party affiliation," *id.* at *5, and this conclusion was affirmed by the Third Circuit, *Busa*, 458 F. App'x at 178. Accordingly, the Court disagrees with Plaintiff's argument.

9

Because the Public Safety Director role involved policymaking, such that political affiliation was an appropriate requirement for the job, Plaintiff's *prima facie* political affiliation retaliation claim fails as a matter of law.

### 2. Political Retaliation as to the City

Plaintiff also asserts his political affiliation retaliation claims against the City. The City seeks to dismiss Plaintiff's claims because the SAC fails to state a cognizable § 1983 claim against a municipal entity. Passaic MTD at 7-8. A local government cannot be sued under § 1983 for an injury inflicted by its employees or agents. Rather, a municipality may only be liable for purpose of § 1983 if the "local government's policy or custom inflicted the injury in question." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (internal punctuation marks omitted). In other words, *Monell* liability exists if "the municipality, through one of its policymakers, affirmatively proclaimed the policy, or acquiesced in the widespread custom, that caused the violation." *Adams v. City of Atlantic City*, 294 F. Supp. 3d 283, 300 (D.N.J. 2018) (quoting *Watson v. Abington Township*, 478 F.3d 144, 155-56 (3d Cir. 2007)).

Here, Plaintiff's claims against the City fail because Plaintiff does not establish that a constitutional wrong occurred. As discussed, because the Court concludes that Plaintiff held a position that involved political affiliation, Plaintiff cannot plead a *prima facie* claim for political retaliation. Without a constitutional violation, the City cannot be held liable under *Monell*.[9] *See*

---

[9] Even if a constitutional wrong existed, Plaintiff fails to adequately allege the requisite policy or custom. Relying on *Pembaur v. Cincinnati*, 475 U.S. 469 (1986), Plaintiff contends that a policy existed because Blanco and Schaer were the decision makers for the City. Plaintiff continues that because of their decision-making authority, a *Monell* claim can stand solely based on their conduct. Plf. Opp. at 14-16. *Pembaur* "makes clear that an official with policymaking authority can create official policy, even by rendering a single decision." *McGreevy v. Stroup*, 413 F.3d 359, 367-68 (3d Cir. 2005). In other words, to attach *Monell* liability to a municipality based on a single

10

*Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 318 (D.N.J. 2015) ("In the absence of a constitutional violation, [Defendant] cannot be held liable under § 1983 for failure to train or for acquiescing in an unconstitutional custom."). The claims asserted against in the City, therefore, are dismissed.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss (D.E. 62, 63, 64) are **GRANTED**. A court must grant leave to amend a complaint "absent evidence that amendment would be futile or inequitable." *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). An amended complaint would be futile if it "would fail to state a claim upon which relief could be granted." *Id.* at 115. Given Plaintiff's legal theories, the Court has serious concerns that any

---

decision, "the alleged Constitutional violation must be considered an official action taken by the municipality through an individual that has final policymaking authority." *Mrazek v. Stafford Township*, No. 13-1091, 2017 WL 1788655, at *9 (D.N.J. May 5, 2017).

Plaintiff's argument, however, is not supported by the facts pled in the SAC. As to Schaer, the SAC pleads that he has *de facto* control over the City based on his "political influence", "patronage power", and "ability to influence State aid decisions." SAC ¶ 9. Even if accepted as true, *de facto* power is not the same as having final policymaking authority. As a result, Schaer's decisions, assuming that one is even pled, cannot amount to a City policy or custom. As mayor, Blanco's decisions could conceivably create a policy or custom as recognized in *Pembaur*. But the SAC fails to allege sufficient facts by which the Court could assume that Blanco made the decision to place Plaintiff on administrative leave, or even that this decision was final and unreviewable. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (explaining that for *Monell* liability to attach to the decision from an official with final policymaking authority that decision must, among other things, be final and unreviewable).

For purposes of *Monell* liability, a custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Estate of Roman*, 914 F.3d at 798 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). To establish the alleged custom of political retaliation, Plaintiff argues that an incident involving a former sergeant with the Passaic Police Department, Roy Bordamonte, which is discussed in the SAC, establishes a custom of political retaliation. SAC ¶¶ 30-37. The fact that Plaintiff was attempting to plead a *Monell* claim based on an unconstitutional custom is not at all clear in the SAC. The two incidents are factually distinct, and the SAC makes no efforts to tie to the two events together such that they could establish a pattern of misconduct.

11

attempted amendment will be futile. However, because the SAC relies on entirely new theories, the Court will provide Plaintiff with a final opportunity to amend his pleading. Accordingly, the Second Amended Complaint is dismissed without prejudice and Plaintiff may file an amended pleading that is consistent with this Opinion, within thirty (30) days. If Plaintiff fails to file a third amended complaint within the time allotted, this matter will be dismissed with prejudice. An appropriate Order accompanies this opinion.

Dated: November 19, 2019

                                            John Michael Vazquez, U.S.D.J.